CHARLES E. ECKEL et al., Plaintiffs, *v.* TRENCHER FURS, INC.,
Defendant.

Municipal Court of the City of New York, Borough of Manhattan,
December 31, 1947.

*Benjamin L. Tell* for plaintiffs.

*A. J. Asche* for defendant.

WAHL, J. This action has been submitted to the court upon
an agreed statement of facts, from which it appears that on
June 4, 1946, the plaintiffs delivered to defendant, for storage
purposes, a fur coat, at which time defendant executed and
delivered to plaintiffs its fur storage agreement (plaintiffs'
Exhibit 2 in evidence) designated therein as Permanent Fur
Storage Receipt No. S 8573. It further appears from the stipu-
lation of facts that as plaintiffs knew, defendant's storage
charges are graduated in accordance with the customer's valua-
tion of the article stored; that at the time of delivery of the coat
to the defendant, the plaintiffs stated that they wished o place a
minimum valuation of $50 on the coat inasmuch as plaintiffs
had procured and were covered by a policy of insurance carried
by them for their own account; that on two previous occasions,
to wit, April 29, 1945, and May 5, 1944, plaintiffs had likewise
stored said fur coat with defendant and on each of these occa-
sions defendant had issued to plaintiffs similar receipts contain-
ing the same terms and conditions as plaintiffs' Exhibit 2
and wherein on each of these occasions the valuations set forth

for said coat were also the sum of $50 in each instance. Continuing, the stipulation of facts further reveals that the coat was damaged by water on or about July 4, 1946, while in the storage vaults of the defendant and that the damage was occasioned by water issuing from a faucet accidentally left open by an employee of the defendant in a lavatory on an upper floor of the building of the defendant; that said act was not committed with the intent of damaging any merchandise in the defendant's premises nor was same willful in any other manner; that subsequently plaintiff's insurance company paid her claim for the damage done under her own personal insurance policy; that at the time defendant received said coat from plaintiffs it caused the coat to be insured for the sum of $50, paying a premium based on the amount of valuation; that defendant has received said sum of $50 from its insurance company in payment of the damage to the coat, which amount it has tendered to plaintiffs in full payment of the damage.

The issue thus presented to the court for determination is whether by reason of the foregoing facts and plaintiffs' Exhibit 2, the defendant's liability is limited to the sum of $50 stated in the storage agreement.

Upon a study of plaintiffs' Exhibit 2 we find therein the following language: "Permanent Fur Storage Receipt No. S 8573 "; " Kind of Garment A: Gray Persian Coat; Customer's Valuation $50 —; storage charges $5 —; Does customer carry own insurance? Yes X ". " Notice to the Customer: * * * The articles described herein are received only in accordance with the terms and conditions of the agreement on the reverse side hereof." On the reverse side the following terms and conditons are set forth: " TERMS AND CONDITIONS OF THIS AGREEMENT: 1. Trencher Furs, Inc., agrees to take for storage the articles listed on the reverse side hereof and to procure insurance for said articles, at its own expense unless said articles are received for storage only or the customer carries his or her own insurance thereon. * * * 3. In the event of loss or damage to any article, the customer shall not be entitled to recover more than the respective valuation of such articles stated on the reverse side hereof nor in any event, more than the cost to repair or replace the article with furs or materials of like kind and quality. 4. In the event of loss or damage, Trencher Furs, Inc., shall have the option, in full satisfaction of all claims, of, (a) paying to the customer the sum of money received from the insurance company by reason of said loss or damage, or, (b) repairing, replacing or restoring such articles to as good a condition as when received by it."

This, then, constitutes the agreement between the parties, and it is well established that parties to a contract of bailment can stipulate to a limitation of liability (*Boyle* v. *Bush Terminal R. R. Co.*, 210 N. Y. 389; *McCloy* v. *Pennsylvania R. R. Co.*, 267 App. Div. 179; *Lumbermen's Ins. Co.* v. *Russeks Fifth Ave., Inc.*, N. Y. L. J., Feb. 25, 1939, p. 894, col. 7 [City Ct., N. Y. Co.], affd. App. Term, 1st Dept., Jan. 20, 1942, affd. 264 App. Div. 763; *Berkenfeld* v. *Chelsea Fireproof Storage Warehouse*, App. Term, 1st Dept., Dec. 28, 1937, affd. 258 App. Div. 1039; *Magnin* v. *Dinsmore.* 70 N. Y. 410; *D'Utassy* v. *Barrett*, 219 N. Y. 420). Where a valuation has been agreed upon, such value shall be the maximum amount of the liability (*D'Utassy* v. *Barrett, supra*, and cases therein cited). The agreement as set forth in the storage receipt herein is complete on its face and unambiguous. Plaintiffs of their own accord placed a valuation of only $50 upon the coat and paid the correspondingly low charge of $5 therefor and stated specifically that they had their own insurance upon the coat. If agreements are to be given their true intent, there is nothing in this agreement which calls for other than its enforcement in accordance with its tenor, and not to read into it plaintiffs' strained construction that it applies only to the placing of insurance.

I have examined the opinion of Judge Coxe in *Taccetta* v. *Rice & Rogovin* (75 F. Supp. 373, U. S. Dist. Ct., S. D. N. Y.), and although I have great respect for his views, I am inclined to believe that New York law must prevail.

Accordingly, I find in favor of plaintiffs for the sum of $50, the amount of the defendant's limited liability. No interest or costs, pursuant to the stipulation herein.